UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HADARI COHEN,

     Plaintiff,

v.                                CASE NO. 8:22-cv-866-SDM-TGW

KEY SAFETY SYSTEMS, INC., and
KEY AUTOMOTIVE OF
FLORIDA, LLC,

     Defendants.

_____/

## ORDER

     Hadari Cohen, the personal representative of the Florida-probated estate of Shirley Cohen, sues (Doc. 1-1) Key Safety Systems, Inc. (operating as Joyson Safety Systems) and Key Automotive of Florida, LLC.  In the complaint, Hadari alleges that a defective airbag inflator (designed and manufactured in Florida by the defendants and installed in Shirley's car) caused Shirley's death after an otherwise quotidian fender-bender in Jerusalem, Israel.  The complaint asserts against each defendant a claim for negligence, wrongful death, and strict product liability.

     Invoking diversity jurisdiction, the defendants remove.  (Doc. 1)  Because the automobile accident "that forms th[e] basis of this [action]" reportedly "has no con-nection to the United States," the defendants move (Doc. 33) to dismiss for *forum non conveniens*.  Hadari responds (Doc. 41) and argues, among other things, that the ac-tion must continue in the United States because Israel, which statutorily eliminated

any cause of action "for motor vehicle products liability cases," is not an "available alternative forum."  With leave, the defendants reply (Doc. 46).

## BACKGROUND[1]

In May 2020, Shirley Cohen — driving her 2011 Alfa Romeo on the streets of Jerusalem, Israel — rear-ended another car.  (Doc. 1-1 at 5)  Although causing little damage to either vehicle, the crash caused the Alfa's internal computer to trigger both the driver-side airbag (embedded in the steering wheel) and the passenger-side airbag.  (Doc. 1-1 at 2 & 5)

Each of the Alfa's several "airbag modules" — manufactured and sold to Alfa by Joyson Safety Systems — relies on several component parts to achieve near instantaneous inflation upon impact.  Each airbag includes a "Key Automotive ADI-D inflator" — a small device that catalyzes a chemical reaction upon direction by an airbag sensor.  (Doc. 1-1 at 4)  This chemical reaction creates the gas that inflates the airbag.  Key Automotive of Florida allegedly manufactured the ADI-D inflator installed in the Alfa's driver-side airbag.  (Doc. 1-1 at 4)

The ADI-D inflator "is a pyrotechnic two-stage inflator."  (Doc. 1-1 at 4)  That is, the inflator creates the necessary gas by igniting a chemical compound, and the inflator contains two compounds that inflate the airbag to different levels based on a crash's severity.  Stage 1, triggered by low-speed crashes, burns the compound

---

[1] The complaint (Doc. 1-1) asserts the following facts, which are presumed true in resolving a motion to dismiss.

5-aminotetrazole (5-AT); stage 2, triggered by high-speed crashes, burns the compound nitroguanidine.  (Doc. 1-1 at 4)

Because 5-AT "readily absorb[s] moisture from the environment," "the [ADI-D] inflator housing is designed to be hermetically sealed."  (Doc. 1-1 at 6)  In the Alfa's driver-side airbag, however, a defect in the inflator's manufacture or design caused the seal to fail and allowed the 5-AT to absorb moisture, which significantly increased the 5-AT's "burn rate."  (Doc. 1-1 at 7)  Consequently, when the driver-side inflator ignited, the 5-AT burned much faster than anticipated and caused "excessive internal pressures" that detached the airbag module from the steering wheel, ruptured the inflator's metal housing, and launched pieces of the ruptured housing — now shrapnel — throughout the vehicle.  (Doc. 1-1 at 5–6)

Several pieces of shrapnel struck Shirley in the head and upper body. (Doc. 1-1 at 6)  As a result, Shirley suffered several injuries including "frontal skull fracture[] with penetration of bone fragments into the anterior brain, scattered cerebral bleeding, tonsillar herniation, ventricular compression, cerebral oedema, and left elbow fracture."  (Doc. 1-1 at 6)  After a week on mechanical ventilation, Shirley died from these injuries.  (Doc. 1-1 at 6)

Although Shirley lived in Israel, her sister, Hadari Cohen, resides in Florida. In February 2022, Hadari petitioned (Doc. 33-1) a Florida court in Polk County to administer Shirley's estate.  The petition asserts that venue is proper in Polk County because Shirley "had a debtor who resides in this county at the time of [her] death." After the probate court appointed her as the personal representative of Shirley's

- 3 -

estate, Hadari sued (Doc. 1-1) Key Automotive and Joyson Safety Systems.  Alleging that the defendants designed, manufactured, inspected, tested, and distributed the defective inflator module "in and from [their] Lakeland, Florida facilities," the complaint asserts a claim against each defendant for (1) negligence, (2) failure to warn, (3) wrongful death, and (4) strict product liability.  The complaint asserts that each defendant is liable for the inflator's allegedly defective design and asserts that Key Automotive is liable for the inflator's allegedly defective manufacture.

The defendants remove (Doc. 1) the action.  Arguing that the action should continue in Israel, the defendants move (Doc. 33) to dismiss for *forum non conveniens*.  In response (Doc. 41) Hadari argues that Israel is not an "available alternative forum" because an Israeli court would exercise no jurisdiction over this action.  Also, Hadari argues that the defendants fail to demonstrate that the public and private factors outweigh the substantial deference owed to an American plaintiff's decision to sue in an American court.  With leave, the defendants reply (Doc. 46).

## DISCUSSION

Moving (Doc. 33 at 1) to dismiss, the defendants insist that this action "is textbook forum shopping" and that "[t]he motor vehicle crash that forms th[e] basis of this [action] has no connection to the United States — it occurred over 6,000 miles away in Jerusalem."  Urging that this action should continue in Israel, the defendants note (1) that Shirley "has no ties to the United States"; (2) that Shirley's mother, the sole beneficiary Shirley's estate, "lives in Israel"; (3) that Shirley's Alfa "and all documentary evidence related to the accident . . . are located in Israel"; and (4) that

- 4 -

"[e]very percipient witness, bystander, first responder, investigator, and [doctor] is in Israel." Finally, the defendants assert that "Israel has a sophisticated judiciary and well-established statutory scheme" to remedy injury or death in a traffic accident.

In response, Hadari first argues that Israel cannot justify dismissal for *forum non conveniens* because "Israel lacks a private cause of action for motor vehicle products liability cases." (Doc. 41 at 4) Because Israeli law bars each claim, Hadari continues, this action cannot resume in Israel and, consequently, the action must continue in the United States. Also, Hadari argues that, as the personal representative of Shirley's estate, Hadari — an American permanent resident and now citizen — is the "real party in interest." Hadari continues that, as an American plaintiff, her decision to sue in Florida warrants substantial deference.[2] (Doc. 41 at 6) Hadari concludes that evidence of the inflator's design and manufacture exists at the defendants' "corporate and manufacturing facilities . . . located in Lakeland" and that the defendants fail to demonstrate that the evidence in Israel outweighs the deference afforded to Hadari's decision to sue in her home forum.

Under *Leon v. Million Air, Inc.*, 251 F.3d 1305, 1310–11 (11th Cir. 2001), a defendant moving to dismiss for *forum non conveniens* "must demonstrate [] (1) [that] an adequate alternative forum is available, (2) [that] the public and private factors weigh in favor of dismissal, and (3) [that] the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." And under *Piper Aircraft Co. v.*

---

[2] The parties dispute whether Hadari's citizenship or Shirley's citizenship determines the deference owed to a plaintiff's choice of forum under *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981).

*Reyno*, 454 U.S. 235, 254 n.22 (1981), a district court must consider the availability of an adequate alternative forum "[a]t the outset of any *forum non conveniens* inquiry," that is, before weighing any public or private factors. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 506–07 (1947) ("[F]orum non conveniens . . . presupposes at least two [available] forums."); *Associação Barsileira de Medicina de Grupo v. Stryker Corp.*, 891 F.3d 615, 619–20 (6th Cir. 2018) ("Identifying an [available] alternate forum is a prerequisite for dismissal, not a factor to be balanced. If there is no suitable alternate forum where the case can proceed, the entire inquiry ends."). Accordingly, Israel's availability and adequacy warrants consideration before any other element.

1.   Israel's Accident Compensation Law

Originally enacted in 1975, Israel's "Compensation for Victims of Road Accidents Law" establishes an "exhaustive and exclusive framework for compensation of victims of road accidents." (Doc. 33-5 at 2–3) The parties agree that under the compensation law, a person injured in a "traffic accident . . . will not have a cause of action [under Israeli tort] due to bodily injury, unless [the victim] is injured in an accident caused by another person on purpose." (Doc. 41-5 at 25) In other words, the compensation law eliminates almost all tort litigation for negligence resulting from a "traffic accident," which the law defines as "an event in which a person is injured due to the use of a motor vehicle for transportation purposes." (Doc. 41-5 at 20)

The parties do not dispute that the compensation law applies to the traffic accident and product defect that allegedly caused Shirley's death.[3]

The compensation law, complemented by the "Motor Vehicle Insurance Ordinance," replaces tort recovery with a compulsory no-fault insurance scheme. First, the compensation law imposes on a vehicle's driver "absolute liability . . . for all personal injuries caused in road accidents involving that driver's vehicle." "The [driver's] liability is full and absolute regardless of whether or not the driver was to blame and regardless of whether or not others were to blame or partially to blame." (Doc. 33 at 5) This absolute liability extends to the driver's own injury. (Doc. 41-5 at 21) ("In a traffic accident in which several vehicles were involved, the responsibility for the bodily injuries of the person driving their vehicle will apply to each driver."); (Doc. 33-5) ("[I]f the driver [is] injured in the accident, [the driver] will recover from the insurer of the vehicle.").

Next, the Insurance Ordinance requires every driver to maintain a private automobile insurance policy "that covers (1) personal bodily harm to the driver and (2) the driver's liability for bodily harm caused to others." (Doc. 33-5 at 2) Together, the compensation law and the insurance ordinance create in Israel a recovery scheme that "is most closely analogous to a 'no-fault' system." (Doc. 33 at 5)

_____

[3] Cohen's expert asserts (Doc. 41-5 at 4), and the defendants' expert does not dispute, that the Supreme Court of Israel adopts a maximalist interpretation of "traffic accident" and in *Lesri v. Zion Insurance Co., Ltd.*, holds that the compensation law bars litigation when an allegedly defective portable gas tank ignited a car and killed several people camping near the car. (Doc. 41-5 at 4) (citing *HCJ 236-81 Lesri v. Zion Ins. Co. Ltd.*, Doc. 41-5 at 8–19). And in the reply (Doc. 46 at 2–3 & n.3), the defendants concede that Hadari's claims would fail under the compensation law and that Shirley's estate must "sue [Shirley's] insurance carrier in Israeli court."

(quoting *Zenker v. Allstate Ins. Co.*, 1993 WL 300132, at *1 (E.D. Penn. 1993)) (internal quotations omitted).

Thus, in Israel, anyone injured in an automobile accident is entitled to payment (less a deductible) from either the injured person's insurer or a liable party's insurer for (1) actual and forecast medical expenses, (2) lost earning ability if the victim dies, and (3) statutorily calculated "non-monetary damages." (Doc. 33-5 at 4) To recover under the compensation law, an injured party (including a driver) must deliver to the pertinent insurer a written claim for payment. (Doc. 41-5 at 22) The insurer must pay within sixty days after receiving the claim. If the insurer disputes the claim or if the insurer fails to timely pay, the injured party may sue for judicial declaration of the payment to which the injured party is entitled.

In sum, Israel's no-fault insurance scheme precludes Shirley's estate from suing any defendant in tort to recover for Shirley's death. Instead, Shirley's estate must submit a claim to Shirley's insurer under Shirley's automobile insurance policy. If the insurer disputes the claim or if the parties dispute the payment that the policy requires, Shirley's estate may sue the insurer to determine the estate's entitlement to money under the policy.

2.   Israel's Availability and Adequacy

Although agreeing on the results of Israel's compensation law, the parties dispute whether the compensation law leaves Israel "available" to resolve this action and further dispute whether the relief available under the compensation law is "adequate." (Doc. 33 at 8–14; Doc. 41 at 7–11; and Doc. 46 at 2–5) Under *Leon*,

- 8 -

251 F.3d at 1311, an alternative forum's "[a]vailability and adequacy warrant separate consideration." Availability depends on the forum's ability to exercise jurisdiction over the action; adequacy depends on the remedy that the forum affords the plaintiff. *See Leon*, 251 F.3d at 1311–12

According to *Aldana v. Del Monte Fresh Produce N.A., Inc.*, 578 F.3d 1283, 1290 (11th Cir. 2009), "to be available, the foreign court must be able to 'assert jurisdiction over the litigation sought to be transferred.'" (quoting *Leon v. Million Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001)). And *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981), states that "[o]rdinarily, this [availability] requirement will be satisfied when the defendant is 'amenable to process' in the other jurisdiction." Resting on *Piper Aircraft Co.* and on *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1330 (11th Cir. 2011), which suggests that a defendant's stipulation to accept service in the alternative forum demonstrates the forum's availability, the defendants insist that Israel is available because "the [d]efendants stipulate that they will make themselves amenable to process and jurisdiction in Israel." (Doc. 33 at 8)

But this action confirms *Piper Aircraft Co*'s rule that a defendant's amenability to process only "ordinarily" demonstrates a forum's availability. As Hadari notes (Doc. 41 at 8), a defendant is not meaningfully amenable to process if the alternative forum refuses to entertain the same (or even analogous) litigation and would not allow the action to proceed. *See Leon*, 251 F.3d at 1311 ("[A] dispute about whether [Ecuadorian law] precludes Ecuadorian courts from asserting jurisdiction over [the] [p]laintiff's claims is a dispute about availability."); *Associação Barsileira de Medicina de*

*Grupo*, 891 F.3d at 621 (holding that a defendant's consent to personal jurisdiction in Brazil fails to demonstrate Brazil's availability without evidence "that [the] consent . . . would be legally meaningful").[4]  And *Piper Aircraft Co.*, 454 U.S. at 254 n.22, supports this argument by noting that "dismissal would not be appropriate where the alternative forum does not permit litigation of the subject matter of the dispute." Thus, *Piper Aircraft Co.*'s "ordinary" rule that a defendant's amenability to process demonstrates an alternative forum's availability is inapplicable here because Israel would not exercise jurisdiction over the action or, consequently, the defendants.[5]

Beyond resting on the promise to accept facially ineffective service of process, the defendants attempt to demonstrate Israel's availability (and adequacy) by citing several persuasive — but not binding — decisions suggesting that an alternative forum might remain "available" even if the foreign court refuses to exercise jurisdiction over the action.  (Doc. 46 at 10–14) (citing *Lueck v. Sundstrand*, 236 F.3d 1137 (9th Cir. 2001); *Tang v. Synutra Int'l*, 656 F.3d 242 (4th Cir. 2011); *Veljkovic v. Carlson*

---

[4] As *Associação Barsileira de Medicina de Grupo*, 891 F.3d at 621 persuasively explains "[b]y way of analogy, a party's consent to a federal court's jurisdiction over [a] state-law claim worth $50,000 would not be legally meaningful; regardless of [the] consent, the federal court would be unable to hear the case" because the action fails to invoke federal subject matter jurisdiction. Similarly, a party's consent to accept service of process in an alternative forum is not legally meaningful if the alternative forum exercises no jurisdiction over the action.

[5] In reply (Doc. 46 at 2), the defendants insist that a stipulation to accept process conclusively demonstrates a forum's availability and claim that Hadari's argument "conflates jurisdiction with the merits of her claims under Israeli law." *Forum non conveniens*, the defendants continue, "does not guarantee [the] [p]laintiff a winning forum as to a particular party."

Although offering no guarantee that the plaintiff will win in the alternative forum, *forum non conveniens* requires the alternative forum to at least permit litigation of the subject matter of the plaintiff's claim. The defendants offer no serious argument supporting the suggestion that Israel's compensation law, which deprives a person injured in an automobile accident of "a[ny] cause of action according to the Torts Ordinance" (Doc. 41-5 a 25), alters the merits of Hadari's claims and not the ability to "litigate the subject matter of the dispute."

*Hotels, Inc.*, 857 F.3d 754 (7th Cir. 2017); *Imamura v. Gen. Elec.*, 957 F.3d 98 (1st Cir. 2020)). Of these decisions, *Imamura* offers the most persuasive analysis.

In *Imamura*, several Japanese citizens and businesses sued General Electric (GE) in the District of Massachusetts and alleged that GE bore "at least partial responsibility for" the 2011 nuclear disaster at the Fukushima Daiichi Nuclear Power Plant. *Imamura*, 957 F.3d at 101. Arguing that Japan offered an available and adequate alternative forum, GE moved to dismiss the action under *forum non conveniens*.

Responding to the motion, the plaintiffs noted that Japan offered "no avenue for recovery specifically against GE." *Imamura*, 957 F.3d at 101. Instead, Japan under the 1961 "Act on Compensation for Nuclear Damage . . . channels all liability for [] damages [resulting from a nuclear disaster] to the operator of the nuclear power plant" — the Tokyo Electric Power Company (TEPCO). *Imamura*, 957 F.3d at 102. The Act (1) imposes strict liability on TEPCO, (2) sets a ten-year limitation on a claim against TEPCO, and (3) "provides no cap on the damages against [TEPCO]." *Imamura*, 957 F.3d at 102. Further, the Act allows victims of a nuclear disaster to "pursue compensation [from TEPCO] through three channels, which are not mutually exclusive: (1) file a lawsuit against TEPCO in the courts of Japan[,] (2) submit a direct claim to TEPCO[,] [or] (3) mediate a claim against TEPCO through the Nuclear Damages Dispute Resolution Center." *Imamura*, 957 F.3d at 102.

Affirming dismissal under *forum non conveniens*, *Imamura* first notes that GE's promise to accept service in Japan does not resolve Japan's availability because "'GE is immune from suit in Japan' and thus not meaningfully amenable to process there."

*Imamura*, 957 F.3d at 108 (citing *Associação Barsileira de Medicina de Grupo v. Stryker Corp.*, 891 F.3d 615, 620 (6th Cir. 2018)).  *Imamura* nonetheless concludes that Japan remains "available" because, "while [the] [p]laintiffs may not be able to obtain recovery in Japan specifically from GE, Japan nevertheless adequately addresses the same types of claims through a carefully designed tripartite compensation scheme" that includes judicial or administrative resolution of a claim against TEPCO.  *Imamura*, 957 F.3d at 108

In concluding that Japan remains available despite precluding an action against GE, *Imamura* relies heavily on *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947), which, according to *Imamura*, suggests that a forum's unavailability requires "'the absence of jurisdiction.'"  *Imamura*, 957 F.3d at 109 (quoting *Gilbert*, 330 U.S. at 504). In other words, according to *Imamura*, 957 F.3d at 109, an alternative forum remains available if the forum "allow[s] the [p]laintiff[] [her] day in court" and "offers adequate remedies for the exact same injuries alleged by the plaintiff in U.S. court but channels liability for those injuries to a third party who is not the same defendant in the U.S. case."

To that end, *Imamura* analogizes the plaintiffs' ability to recover from TEPCO in Japan to an action in which:

> a plaintiff secures a judgment against two tortfeasors under a theory of joint and several liability and then fully recovers her damages from one of the tortfeasors.  We do not say the plaintiff is left with an imperfect remedy simply because she recovers one hundred percent of her damages from one tortfeasor and none from the other.

*Imamura*, 957 F.3d at 109–110.  Thus, *Imamura* focuses on *Piper Aircraft Co.*'s admonition that an alternative forum is unavailable if the forum "does not permit litigation of the *subject matter* of the dispute."  454 U.S. at 254 n.22 (emphasis added).  A forum authorizes "litigation of the subject matter of the dispute" if the forum allows the plaintiff to sue one of several joint tortfeasors, even if the forum permits no action against the other tortfeasors.

Similarly, each other decision cited by the defendants considers an alternative forum in which a court or quasi-judicial agency exercises jurisdiction over "the subject matter" of the plaintiff's litigation, if not the exact "litigation sought to be transferred."  For example, *Veljkovic*, 857 F.3d at 756, notes that the "Serbian Resolution Agency," an adjudicatory agency, exercises jurisdiction over the dispute and the parties and enjoys the authority "to give money reparations . . . , to return commercial buildings, or to supervise profit-sharing arrangements as appropriate."  Further, *Tang*, 656 F.3d at 247, notes that Chinese courts had accepted some actions against the defendant that, like the plaintiffs' action, challenged melamine-contaminated baby formula.  Even *Lueck*, 236 F.3d at 1144 n.3, arguably the strongest decision for the defendants, notes that the plaintiffs "could apparently [] bring a punitive damages action [against the defendants] in New Zealand Court."[6]

---

[6] The defendants are correct that *Lueck* finds New Zealand's no-fault insurance scheme adequate after noting that "the district court 'was not required to ask whether [the] [p]laintiffs could bring this lawsuit in New Zealand, but rather, whether New Zealand offers a remedy for their losses.'" (Doc. 33 at 10) (quoting *Lueck*, 236 F.3d at 1143).  But this quote discusses the adequacy of New Zealand's remedy. *Lueck* rests New Zealand's availability on the defendants' suggestion "that they are amenable to service of process in New Zealand," which matters only because a New

(continued…)

- 13 -

Immediately, *Imamura*, *Veljkovic*, and *Lueck* conflict with *Aldana*'s instruction that an alternative forum is available only if "the foreign court [can] 'assert jurisdiction over the litigation sought to be transferred.'" *Aldana*, 578 F.3d at 1290.  That is, *Aldana* commands a district court to deny dismissal under *forum non conveniens* if, for example, the foreign forum precludes an action against the defendants sued in the American action or if the foreign forum compels the plaintiff to litigate the dispute before an administrative (rather than judicial) adjudicator.

Even if *Aldana* is compatible with the persuasive decisions cited by the defendants, Hadari persuades that each decision is inapposite because in each decision the alternative forum exercises jurisdiction over the subject matter of the action, if not the same action.  (Doc. 41 at 10–11)  But, as *Piper Aircraft Co.* fears, Israel permits no "litigation of the subject matter of [this action]."  454 U.S. at 254 n.22.  The parties agree that no Israeli court (or other adjudicatory agency) will permit litigation of any part of Hadari's tort action against these or any other defendants.  Instead, Israel's compensation law funnels any recovery into a private no-fault insurance regime.  That is, Israel compels Shirley's estate to pursue payment from Shirley's private insurer in accord with Shirley's insurance policy, and neither Shirley nor her estate is

---

Zealand court exercises jurisdiction over at least part of the subject matter of the litigation—the punitive damages action. Because Israel exercises no jurisdiction over the subject matter of the litigation, the defendants' amenability to process and the adequacy of Israel's remedy are irrelevant.

Further, if *Lueck* instructs a district court to determine whether a forum is available without "ask[ing] whether [the] [p]laintiffs could bring this litigation in [the alternative forum]," this instruction directly conflicts with *Aldana*, which controls.

ever "allow[ed] [her] day in court" to recover damages caused by the allegedly defective airbag inflator. *Imamura*, 957 F.3d at 109.

As the defendants note, Israel remains "available" to resolve a dispute about whether and in what amount the insurer must pay Shirley's estate. But as Hadari correctly argues (Docs. 41 at 9 and 41-5 at 5), litigation about payment under an insurance contract constitutes a "subject matter" different from this tort action. In this action, Hadari alleges that a defect in the defendants' airbag caused Shirley's death and requests damages resulting from Shirley's death. Because Shirley under the compensation law is "absolute[ly] liabl[e]" for her own death (Doc. 33 at 5), Shirley's estate would in any Israeli action presumably allege that Shirley's death in a traffic accident entitles Shirley's estate to payment in accord with the insurance policy. And the Israeli action would presumably request damages equal to the difference between the money that the insurer offered and the money to which the estate is allegedly entitled under the contract.

In other words, unlike *Imamura*'s hypothetical of an action against one of several joint tortfeasors, an action against Shirley's insurer would not constitute litigation "for the exact same injuries alleged by [Hadari] in [this action]." *Imamura*, 957 F.3d at 109. In fact, an action about an insurer's obligation under a policy to pay an injured insured remains distinct from an action about a tortfeasor's liability for the injury such that the two actions "arise out of a distinct transaction or occurrence and thus lie[] beyond the scope of Rule 13(g)," Federal Rules of Civil Procedure. *Mount Vernon Fire Ins. Co. v. A.S. Const., Inc.*, 2007 WL 2275242, at *3 (E.D.N.Y. 2007); *see*

*St. Paul Fire & Marine Ins. Co. v. Mannie*, 91 F.R.D. 219, 221 (D.N.D. 1981) ("The terms of the policy and their application to a given set of facts is a question entirely separate from the question of [a defendant's] alleged negligence."); *Globe Indem. Co. v. Teixeira*, 230 F. Supp. 444, 445 (D. Haw. 1963) ("The subject matter of the original action in this case is the [insurer's] liability . . . on the insurance policy.  The cross-claims are for damages resulting from the accident alleged.  Thus, the . . . cross-claims did not arise out of the transaction or occurrence that is the subject matter of the original action.").  A different action, asserting a different right, to remedy a different injury, allegedly caused by a different defendant, is not "litigation of the subject matter of the dispute."  *Piper Aircraft Co.*, 454 U.S. at 254 n.22.

*Forum non conveniens* "presupposes at least two forums in which" to resolve a plaintiff's action and "furnishes criteria for [the] choice between them."  *Gilbert*, 330 U.S. at 508.  Israel offers no forum in which to resolve this action.  Instead, Israeli law directs Shirley's estate to recover a contractual payment from a private insurer.  Although Israeli law compelled Shirley to purchase this no-fault insurance, the "remedy" that Shirley's estate might pursue in Israel is entirely private.  The payment yields no decree, judgment, or other resolution entitled to preclusive effect.  No decision interpreting the insurance contract would affect this action.  And no party suggests that Israeli law precludes Shirley's estate from pursuing relief against the insurer while this action pends.  In sum, the defendants fail to demonstrate that Israel remains available to exercise jurisdiction over this action despite explicitly prohibiting any litigation of this action and instead funneling any recovery to a private insurance

regime.  Because Israel cannot exercise jurisdiction over "the litigation sought to be transferred" and indeed cannot exercise jurisdiction over "the subject matter of the litigation," *Aldana*, 578 F.3d at 1290, and *Piper Aircraft Co.*, 454 U.S. at 254 n.22, compel the conclusion that Israel is not an "available alternative forum."

## CONCLUSION

Because the defendants fail to demonstrate that Israel is an available alternative forum in which to litigate Hadari's tort claims, the motion (Doc. 31) to dismiss for *forum non conveniens* is **DENIED**.  Hadari's motion (Doc. 47) to supplement the record is **DENIED AS MOOT**.  Also, the unopposed motion (Doc. 42) to amend the case management order is **GRANTED**.  Not later than **APRIL 1, 2023**, the parties must propose amended case management deadlines.

ORDERED in Tampa, Florida, on March 17, 2023.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE